2004 UT 15

Helen LABELLE, Sheila Carlson, Linda Buckley, and Marilyn Phillips, individuals and as heirs of Norma Mary Harriman, Plaintiffs and Appellants,

v.

McKAY DEE HOSPITAL CENTER, Intermountain Health Care, Inc., Utah corporations, Dr. Ivan D. Wright, Dr. Harold Vonk, and Dr. Ronald S. Rankin, individuals, and John Does 1–50, Defendants and Appellees.

No. 20020204.

Supreme Court of Utah.

Feb. 20, 2004.

Rehearing Denied April 14, 2004.

Thor B. Roundy, Salt Lake City, for plaintiffs.

JoAnn E. Carnahan, Paul D. Van Komen, Salt Lake City, for McKay Dee Hospital Center and Intermountain Health Care.

Richard Campbell, David Ference, Ogden, for Dr. Vonk and Dr. Rankin.

P. Keith Nelson, Robert G. Wright, Brandon B. Hobbs, Salt Lake City, for Dr. Wright.

NEHRING, Justice:

¶ 1 Helen Labelle and her sisters, the daughters and heirs of Norma Mary Harriman, sued McKay–Dee Hospital Center, Intermountain Health Care, Drs. Wright, Vonk, and Rankin, and other unnamed health care providers for medical malpractice. The district court granted the defendants' motion to dismiss [1] the suit on the grounds that the court lacked subject matter jurisdiction to hear the case, because the Harriman heirs had failed to mail a copy of the request for prelitigation hearing to the defendants, as required by section 78–14–12(2)(b) of the Utah Health Care Malpractice Act. Utah Code Ann. § 78–14–12(2)(b) (2002). The Harriman heirs appealed. We reverse.

¶ 2 On February 20, 1999, Mrs. Harriman went to the emergency room of McKay–Dee Hospital with an inflamed knee and a head injury. She was attended to by the emergency room staff and Drs. Wright and Rankin, who consulted by telephone with Dr. Vonk, Mrs. Harriman's primary health care provider. The physicians examined Mrs. Harriman, drained fluid from her knee, and released her. Mrs. Harriman's condition deteriorated, resulting in another emergency room visit on February 24, 1999. This time Mrs. Harriman was admitted to the hospital,

---

1. The district court noted that it had received and considered matters outside the pleadings, and therefore treated the motion to dismiss as a motion for summary judgment.

where she was diagnosed with a severe staphylococcus infection. Mrs. Harriman remained as a patient at McKay–Dee Hospital until March 3, 1999, when she died.

¶ 3 Believing that the negligence of the health care providers caused their mother's death, the Harriman heirs sought legal relief under the Utah Health Care Malpractice Act, Utah Code Ann. §§ 78–14–1 to –17 (2002). The Medical Malpractice Act imposes procedural requirements on claimants which, in their scope, set persons with medical malpractice claims apart from other tort claimants. These mandates, commonly known as "prelitigation procedures," are a central feature of the Medical Malpractice Act, enacted to further the Act's goal "to expedite early evaluation and settlement of claims." Utah Code Ann. § 78–14–2.

¶ 4 Two of the prelitigation procedures created by the Medical Malpractice Act stand out because they have been expressly designated as preconditions to invoking the jurisdiction of the district court: the notice of intent to commence action, and the prelitigation hearing. Utah Code Ann. §§ 78–14–8, –12.

¶ 5 On February 14, 2001, the Harriman heirs complied with the first of these preconditions by sending a notice of intent to commence an action to the health care providers believed to have provided Mrs. Harriman with deficient care.

¶ 6 This appeal concerns the Medical Malpractice Act's second procedure with jurisdictional implications, the prelitigation hearing. At issue is whether the Harriman heirs' failure to mail a copy of the request for that hearing, as required by the Malpractice Act, divested the district court of subject matter jurisdiction to consider the lawsuit. The district court held that the requirement that notice be mailed to the health care providers was governed by section 78–14–12(1)(c) of the Malpractice Act, which states: "The proceedings are informal, nonbinding, and are not subject to Title 63, Chapter 46b, Administrative Procedures Act, but are compulsory as a

condition precedent to commencing litigation." The district court agreed with the health care providers that as a consequence of the Harriman heirs' failure to mail the notice, the litigation had not commenced and the court lacked subject matter jurisdiction to hear the matter. Because the mailing requirement is not part of the "proceedings" as that term is used in section 78–14–12(1)(c), we hold that failure to comply with it does not affect the district court's subject matter jurisdiction.

¶ 7 This outcome reflects the integration of our jurisprudence relating to the dimensions of the subject matter jurisdiction of our district courts with our interpretation of the Medical Malpractice Act. Our examination of the Malpractice Act is guided by the plain language of its text read as a whole with a view toward harmonizing its provisions. *See State v. Schofield,* 2002 UT 132, ¶ 8, 63 P.3d 667. As this is an appeal from a grant of summary judgment and the issue turns on interpretation of law, we proceed with our analysis independent of the district court's effort.

¶ 8 Article VIII, section 5 of the Utah Constitution vests in the district court "original jurisdiction in all matters except as limited by this constitution or by statute." We presume that our district courts retain their grant of constitutional jurisdiction in the absence of a clearly expressed statutory intention to limit jurisdiction. As we have previously stated:

> [T]o divest the official courts of jurisdiction . . . precludes them from fulfilling their responsibility of remaining available to adjudicate all controversies for anyone seeking justice. The reticence with which [divestiture of jurisdiction] should be done is further emphasized by realizing that [divestiture] cuts into the procedural safeguards our law provides, including the right to have a trial by jury if one so desires, and the right of review on appeal.

*Barnhart v. Civil Serv. Employees Ins. Co.,* 16 Utah 2d 223, 398 P.2d 873, 876 (1965).[2]

---

2. Other states have articulated a similar principle. *See, e.g., Pritchard v. State,* 163 Ariz. 427, 788 P.2d 1178, 1181 (1990) (stating that "a pre-

sumption exists in favor of [a district court's] retention of jurisdiction, and divestiture . . . cannot be inferred but must be clearly and unambig-

The language and structure of the Malpractice Act offer scant evidence of an intention to condition the exercise of the district court's subject matter jurisdiction on compliance with the mailing requirement.

¶ 9 The district court agreed with the health care providers' contention that the mailing requirement of section 78–14–12(2)(b) is a "proceeding" as that term is used in section 78–14–12(1)(c), and is, therefore, "compulsory as a condition precedent to commencing litigation." The text of the Malpractice Act does not, however, support this conclusion. Throughout the text of the Medical Malpractice Act, the term "proceeding" refers exclusively to the prelitigation hearing itself, to the exclusion of the procedure *for* requesting prelitigation panel review. The plain language of the complete text of section 78–14–12(1) demonstrates this point:

(1)(a) The division shall provide a hearing panel in alleged medical liability cases against health care providers as defined in Section 78–14–3, except dentists.

(b)(i) The division shall establish procedures for prelitigation consideration of medical liability claims *for* damages arising out of the provision of or alleged failure to provide health care.

(ii) The division may establish rules necessary to administer the process and procedures related to prelitigation hearings and the conduct of prelitigation hearings in accordance with Sections 78–14–12 through 78–14–16.

(c) The proceedings are informal, nonbinding, and are not subject to Title 63, Chapter 46b, Administrative Procedures Act, but are compulsory as a condition precedent to commencing litigation.

(d) Proceedings conducted under authority of this section are confidential, privileged, and immune from civil process.

Utah Code Ann. § 78–14–12(1). The sole subject of this subpart is authority of the Division of Occupational and Professional Licensing to promulgate procedures for prelitigation review of medical malpractice claims, including hearing procedures. The prelitigation review components, in particular the prelitigation hearing, are antecedents for "proceedings" in both subparts (c) and (d) of section 78–14–12(1). These subparts characterize the proceedings as "informal, nonbinding, and [ ] not subject to Title 63, Chapter 46b, Administrative Procedure Act," and "confidential, privileged, and immune from civil process." *Id.* None of these descriptive terms is relevant to the requirement that the request for prelitigation panel review be mailed to health care providers. In fact, the application of any of these descriptions of the proceedings to the mailing requirement is confusing and nonsensical.

¶ 10 The use of the term "proceeding" elsewhere in the Medical Malpractice Act reinforces the intention made evident in the language of section 78–14–12(1) to limit its scope to prelitigation hearings. For example, "proceeding" appears seven times in section 78–14–13 to refer to the prelitigation panel:

(1) No record of the *proceedings* is required and all evidence, documents, and exhibits are returned to the parties or witnesses who provided the evidence, documents, and exhibits at the end of the *proceedings* upon the request of the parties or witnesses who provided the evidence.

. . . .

(4) The *proceedings* are informal and formal rules of evidence are not applicable. There is no discovery or perpetuation of testimony in the *proceedings*, except upon special order of the panel, and for good cause shown demonstrating extraordinary circumstances.

(5)(a) A party is entitled to attend, personally or with counsel, and participate in the *proceedings*, except upon special order of the panel and unanimous agreement of the parties. The *proceedings* are confidential and closed to the public.

uously found"); *State v. Villados,* 55 Haw. 394, 520 P.2d 427, 430 (1974) (holding that "the law in favor of [divestment of a court's jurisdiction] must be clear and unambiguous"); *Paley v. Coca Cola Co.,* 389 Mich. 583, 209 N.W.2d 232, 236 (1973) (quoting 19th century Michigan State Supreme Court case that "the law in favor of [divesting a court of jurisdiction] must be clear and unambiguous . . . and leave nothing for the play of doubt and uncertainty").

(b) No party has a right to cross-examine, rebut, or demand that customary formalities of civil trials and court proceedings be followed. The panel may, however, request special or supplemental participation of some or all parties in particular respects. . . .

. . . .

(7) Parties may be represented by counsel in *proceedings* before a panel.

Utah Code Ann. § 78–14–13(1)(4) to (5)(a), (b), (7) (emphasis added).

¶ 11 Section 78–14–14 contains one reference to proceedings, stating: "The panel shall render its opinion in writing no later than 30 days after the end of the *proceedings.*" Utah Code Ann. § 78–14–14 (emphasis added).

¶ 12 Addressing the use of evidence considered by the prelitigation panel, section 78–14–15(1) provides:

(1) Evidence of the *proceedings* conducted by the medical review panel and its results, opinions, findings, and determinations are not admissible as evidence in an action subsequently brought by the claimant in a court of competent jurisdiction.

Utah Code Ann. § 78–14–15(1) (emphasis added).

¶ 13 And finally, section 78–14–16 completes the Malpractice Act's use of the term proceeding with the following:

Upon written agreement of all parties, the *proceeding* may be considered a binding arbitration hearing and proceed under Title 78, Chapter 31a, except for the selection of the panel, which is done as set forth in Subsection 78–14–12(4). If the *proceeding* is considered an arbitration proceeding, the parties are equally responsible for compensation to the members of the panel for services rendered.

Utah Code Ann. § 78–14–16 (emphasis added). The plain meaning of "proceeding" in each of these sections of the Medical Malpractice Act is restricted to the prelitigation hearing and does not reach the mailing requirement.

¶ 14 To construe section 78–14–12(1)(c) in a manner to impose jurisdictional consequences on a claimant's every procedural stumble is to misapprehend the Medical Malpractice Act's selective application of preconditions to maintaining malpractice lawsuits.

¶ 15 In addition to making the "proceedings" a "condition precedent to commencing litigation" in section 78–14–12(1)(c), the Malpractice Act expressly conditions the initiation of a malpractice action on the filing of a notice to commence action. *See* Utah Code Ann. § 78–14–8. If the health care providers' view that "proceedings" as used in section 78–14–12(1)(c) applies to prelitigation activities generally, the language of section 78–14–8 would be mere surplusage.

¶ 16 In explaining our approach to statutory interpretation, we stated:

Statutory enactments are to be construed as to render all parts thereof relevant and meaningful. Likewise, we are compelled to give the statutory language meaning and to assume that each term in the statute was used advisedly . . . unless such a reading is unreasonably confused or inoperable. We will avoid an interpretation which renders portions of, or words in, a statute superfluous or inoperative.

*Platts v. Parents Helping Parents,* 947 P.2d 658, 662 (Utah 1997) (citing *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 906 (Utah 1984); *Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980); *Savage Indus., Inc. v. State Tax Comm'n,* 811 P.2d 664, 669 (Utah 1991); *State v. Hunt,* 906 P.2d 311, 312 (Utah 1995)). The application of these principles here underscores our conclusion that the request for prelitigation review mailing requirement is not a section 78–14–12(1)(c) proceeding.

¶ 17 We do not ignore the fact that the requirement that the request for prelitigation panel review be mailed to the health care providers is mandatory. A claimant's failure to comply with this requirement may well warrant sanction by either the Division of Professional Licensing or the district court. The mailing requirement is, however, a minor component of the Malpractice Act's prelitigation scheme. It serves a wholly informational role, and it is difficult to envision how a health care provider could be prejudiced by

being deprived of a copy of the claimant's request for prelitigation panel review.

¶ 18 Accordingly, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

¶ 19 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING'S opinion.