2006 UT App 188

Rod N. ANDREASON, Plaintiff
and Appellant,

v.

Scott FELSTED, an individual; Dean
Viertel, an individual; Troy Peterson, an
individual; Body Firm Aerobics, Inc., a
Utah corporation; and Gold's Gym of
Provo aka Gold's Gym, an unregistered
dba of Body Firm Aerobics, Inc., Defen-
dants and Appellees.

No. 20040800–CA.

Court of Appeals of Utah.

May 11, 2006.

Rod N. Andreason, Murray, Appellant Pro Se.

Brian C. Harrison, Provo, for Appellees.

Before Judges McHUGH, ORME, and THORNE, Jr.

## OPINION

ORME, Judge:

¶ 1 This lawsuit arises out of a fraudulently altered agreement for a gym membership. Plaintiff Rod N. Andreason asks this court to reverse two summary judgment rulings and the dismissal of his lawsuit. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 In October 1999, Andreason entered into an agreement to purchase a membership in Gold's Gym of Provo, owned by Scott Felsted, Dean Viertel, and Troy Peterson (collectively, "Defendants"). Andreason correctly understood that his was to be a month-to-month membership agreement rather than a one- or two-year contract of the sort gyms and health clubs customarily offer. After Andreason had signed the membership agreement and taken his yellow copy, however, one of Defendants' employees altered Defendants' copy of the contract and, unbeknownst to Andreason, revised it to read like a twelve-month agreement.

¶ 3 After five months' use of the Gold's Gym facilities, Andreason sought to terminate what he understood to be a month-to-month membership. Defendants informed Andreason he would be required under his membership agreement to pay the remaining balance on a full one-year gym membership. Andreason refused to pay the full-year balance. Defendants turned to AFS, Inc., a collection agency they frequently used to collect on delinquent accounts, and AFS prosecuted a collection action against Andreason for $182.21 plus costs and attorney fees. At about that same time, either AFS or Defendants caused negative information to be included in Andreason's personal credit report.

¶ 4 When the collection action proceeded to trial, Andreason and AFS entered their respective copies of the membership contract into evidence. Comparing the two copies of the contract, the court found that Defendants' copy of the contract was different from Andreason's and that Defendants' version was "clearly fraud." The court concluded that Defendants' agent had "engaged in [f]raud" and dismissed the collection action.

¶ 5 Andreason subsequently filed the present lawsuit, bringing several claims against Defendants. The only claims remaining are those of fraudulent misrepresentation and violation of the Utah Consumer Sales Practices Act (the UCSPA), Utah Code Ann. §§ 13–11–1 to –23 (2005). Andreason filed a motion for partial summary judgment on liability, asserting that under the doctrine of res judicata—in particular, issue preclusion—the dismissal of the collection action operated as a determination, binding on Defendants, as to the issue of fraud because the court in the collection action determined the membership contract was "clearly fraud" and that Gold's Gym had "engaged in [f]raud." The trial court denied Andreason's motion for partial summary judgment on liability, concluding that the elements of issue preclusion had not been met and the collection action did not resolve the issue of fraud as it pertained to Andreason's present lawsuit.

¶ 6 After discovery, the parties filed cross-motions for summary judgment, with Defendants moving for summary judgment on all of Andreason's claims and Andreason moving for summary judgment on his fraudulent misrepresentation and UCSPA claims. The trial court again denied Andreason's motion and granted summary judgment in favor of Defendants, dismissing Andreason's claims. While the trial court concluded that the actions of Defendants or their agent constituted a violation of section 13–11–4(1) of the UCSPA, see id. § 13–11–4(1) (2005), the court also concluded that Andreason had failed to demonstrate that he had suffered any loss, as required by section 13–11–19(2), and therefore that he was not entitled to recover actual damages, statutory damages, court costs, or attorney fees as provided in that section. See id. § 13–11–19(2).

## ISSUE AND STANDARD OF REVIEW

¶ 7 Andreason now appeals the trial court's rulings denying his motion for partial summary judgment and his motion for summary judgment, as well as the trial court's decision granting Defendants' motion for summary judgment and dismissing his claims. "Because summary judgment presents only questions of law, we give no deference to the district court's legal decisions and review them for correctness." *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 10, 100 P.3d 1200.

## ANALYSIS

### I. Issue Preclusion

¶ 8 Andreason argues that the trial court erred in denying his motion for partial summary judgment on his claims of fraudulent misrepresentation and violation of the UCSPA, based on the doctrine of issue preclusion. He asserts that the prior collection action fully and fairly litigated the issue of fraud common to both claims and that partial summary judgment as to Defendants' liability on both claims should have been granted. The trial court concluded that the findings the collection court included in its order of dismissal, and any verbal findings it made from the bench, were inadequate to establish that the fraud issue decided in the prior case was identical to the one in the instant action; that the previous matter was fully and fairly litigated; and that there was a final decision on the merits of the issue. Thus, it concluded the requirements for issue preclusion had not been met. *See Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19, ¶ 27, 110 P.3d 678.

¶ 9 The record on appeal contains only the court's written order dismissing the collection action, and we have not been provided with any transcript or other verbatim record of the collection action proceedings. The order of dismissal itself provides only a cursory finding that Defendants' copy of the membership agreement was "clearly fraud" and the conclusion that Gold's Gym had "engaged in [f]raud." Standing alone, the order of dismissal is insufficient to allow a determination that the requirements of issue preclusion have been met. And absent a complete record of the collection action proceedings, we decline to disturb the trial court's determination, apparently reached after reviewing the complete record of the collection action, that the elements of issue preclusion were not met. *See Glencore, Ltd. v. Ince*, 972 P.2d 376, 381 (Utah 1998) ("Here, the record ... before us on appeal[ ] does not establish the four elements necessary for issue preclusion."); *Stevensen v. Goodson*, 924 P.2d 339, 353 (Utah 1996) (refusing to affirm on issue preclusion grounds where a complete record of the relevant proceedings was not made a part of the appellate record and "nothing in the record shows that the elements of [issue preclusion] have been met"); *Busch v. Busch*, 2003 UT App 131, ¶ 9, 71 P.3d 177 (holding that without the benefit of the record, "we cannot determine what issues were addressed" and, thus, whether any of the elements of issue preclusion have been met). *See also State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279 ("An appellate court's 'review is ... limited to the evidence contained in the record on appeal.'") (omission in original) (citation omitted).[1]

### II. "Loss" Under the UCSPA

¶ 10 Under section 13–11–19 of the UCSPA, "[a] consumer who suffers *loss* as a result of a violation of [the UCSPA] may recover ... actual damages or $2,000, whichever is greater, plus court costs." Utah Code Ann. § 13–11–19(2) (2005) (emphasis added). In other words, under section 13–11–19, a consumer can bring a private action when the UCSPA has been violated and when the consumer can show he suffered a "loss" that is causally connected to the violation. *See id.* In the instant matter, the trial

---

1.  Apparently Andreason provided the trial court with a videotape of the collection action proceedings that is absent from the record we have before us on appeal. After reviewing the proceedings and the written order of dismissal, the trial court was not persuaded that the elements of issue preclusion had in fact been met. Significantly, the same judge that presided over the collection action was the judge in Andreason's subsequent lawsuit against Defendants, which further puts the trial court in a superior position to know what had transpired in the prior action and to determine whether the doctrine of issue preclusion should apply.

court interpreted section 13–11–19 in a way that equated the term "loss" with "damages," and it concluded, on summary judgment, that Andreason had "not demonstrated that he [had] suffered loss or damages that were caused by Defendants' actions." Under the trial court's interpretation of section 13–11–19, Andreason's inability to prove "loss or damages" was fatal to his ability to recover his "actual damages or $2,000," *id.*, under the statute.[2]

¶ 11 Andreason's appeal turns on the proper interpretation of the term "loss" as used in section 13–11–19. *See id.* The Legislature has not endeavored to specifically define the term "loss" as it appears in that section, and the parties agree no Utah appellate court has yet had the opportunity to shed light on the term's meaning. When we engage in statutory interpretation, "we are compelled to give the statutory language meaning and to assume that each term in the statute was used advisedly." *Labelle v. McKay Dee Hosp. Ctr.*, 2004 UT 15, ¶ 16, 89 P.3d 113 (internal quotations and citations omitted). Thus, we construe statutory enactments in a way that "render[s] all parts thereof relevant and meaningful." *Id.* (internal quotations and citations omitted). We also "avoid an interpretation which renders portions of, or words in, a statute superfluous or inoperative" or makes a statute "unreasonably confused or inoperable." *Id.* (internal quotations and citations omitted). Here, we assume that the Legislature advisedly used the term "loss" instead of the term "damages" and was aware of the meaning of both terms, and we interpret the statute in a way that makes such usage relevant and meaningful rather than arbitrary or casual.

¶ 12 While the terms "loss," "damage," and "damages" are sometimes used synonymously, there are material distinctions among all three. The term "loss," when not otherwise specifically defined, "is a generic and relative term," *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 440 A.2d 810, 814 (1981), and "is not a word of limited, hard and fast

meaning." *Mason v. City of Albertville*, 276 Ala. 68, 158 So.2d 924, 927 (1963). *See Black's Law Dictionary* 945 (6th ed.1990). Depending on the context in which "loss" is used, then, it "has been held to be synonymous with, or equivalent to, . . . damage [or] damages," but also to "deprivation, detriment, injury, [and] privation." *Mason*, 158 So.2d at 927. *See Black's Law Dictionary* 945 (6th ed.1990). " 'Damage,' on the other hand, is only a species of loss," and, consequently, "[t]he term 'loss' necessarily encompasses a broader meaning than the term 'damage.' " *Hinchliffe*, 440 A.2d at 814.

¶ 13 Likewise, the term "damage" itself "is to be distinguished from . . . 'damages' which means a compensation in money for a loss or damage." *DiNapoli v. Cooke*, 43 Conn.App. 419, 682 A.2d 603, 608 (1996) (internal quotations and citation omitted), *cert. denied*, 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997). It follows, then, that the term "loss" naturally embodies a broader concept than the term "damages," which is itself a broader concept than the term "actual damages" as it is used in section 13–11–19. *See* Utah Code Ann. § 13–11–19(2). By employing the more general term "loss" in section 13–11–19, without endeavoring to limit or qualify its meaning, it is apparent that the Legislature has opted to create a broader category of "loss," i.e., "damage, damages, deprivation, detriment, injury, [and] privation," for which a consumer may seek redress under the statute. *Mason*, 158 So.2d at 927. *See Black's Law Dictionary* 945 (6th ed.1990).

¶ 14 Under the plain language of section 13–11–19, then, it is axiomatic that a consumer who is able to prove actual damages invariably also proves that he has suffered a loss and is thus entitled to recover the value of his "actual damages or $2,000, whichever is greater." Utah Code Ann. § 13–11–19(2). It does not necessarily follow, however, that a consumer cannot prove he has suffered a loss without also proving actual damages. Instead, section 13–11–19 creates the oppor-

---

**2.** It is important to note, however, that the trial court specifically concluded that Defendants' actions did in fact violate the UCSPA. It was only Andreason's inability to demonstrate that he had "suffered loss or damages that were caused by Defendants' actions" that prevented him from prevailing on his UCSPA claim. Defendants have not challenged on appeal the trial court's conclusion that they violated the UCSPA.

tunity for a consumer to recover what is essentially a civil penalty in the amount of $2000 where the consumer's actual damages may otherwise be de minimis, speculative, or too difficult to prove, but where the consumer can show that a loss has been suffered as a result of a violation of the UCSPA.[3]

¶ 15 Construing the "loss" requirement of section 13–11–19 in this manner is in accord with the protective and remedial nature of the UCSPA. *See id.* § 13–11–2(2). Moreover, it assures that the consumer's private action in section 13–11–19 provides a meaningful avenue of redress when consumers are harmed by conduct that violates the UCSPA but may not otherwise be pursued by the enforcing authority, i.e., the Division of Consumer Protection. *See id.* § 13–11–3(3). Nevertheless, under our interpretation, the loss requirement fulfills a meaningful role—it presents a threshold barrier that consumers must meet to recover under the statute, guarding against potential abuse of section 13–11–19 by self-appointed "attorneys general" who might otherwise be able to bring vicarious lawsuits for violations of the UCSPA even though they were personally unaffected by the particular violation. *See Hinchliffe*, 440 A.2d at 815 n. 6 (construing a statute with a similar "threshold 'loss' requirement" and noting one commentator's suggestion that the requirement serves "to guard against vicarious suits by self-constituted attorneys general" who have not actually been harmed).

¶ 16 The question remains, however, whether in the procedural posture of this case, Andreason has adequately established that Defendants' violation of the UCSPA caused him to suffer a cognizable "loss," even under the term's broadest meaning, that allows him to recover $2000 in statutorily prescribed damages. Defendants' theory before the trial court was necessarily wide of the mark, as they contended on summary judgment that Andreason failed to produce any evidence of "damages sustained" as a result of Defendants' actions, and they supported their motion with an affidavit so stating.

¶ 17 Andreason, in his own cross-motion for summary judgment and in opposition to Defendants' summary judgment motion, argued that he had produced sufficient evidence of the inconvenience and detriment he suffered because of Defendants' deceptive dealing. Defendants admitted they had caused negative information to be included in Andreason's personal credit report. And Andreason averred that at least one company had refused to renew his credit card account because of the negative information. He also averred that he believed he was required, because of the negative information in his credit report, to pay a higher interest rate on his credit cards and on a mortgage he obtained. He also was put to the trouble and expense of defending the collection action premised on a fraudulent claim.[4]

¶ 18 It is undisputed that Defendants or their agent caused unwarranted negative information to be included in Andreason's per-

---

3. Had the Legislature intended to require a consumer to show something as specific as "actual damages" or even "damages" in order to recover $2000 under the statute, it could have easily specified that such was the case. The fact that the Legislature uses the term "actual damages" in the same sentence as the term "loss" in section 13–11–19 and peppers the rest of the section with the term "damages" readily suggests that the Legislature, being appropriately adverse to the perpetration of deceptive consumer sales practices in this state, intentionally chose the more generic term "loss" when it could easily have employed a more restrictive term like "damages" or "actual damages." *See* Utah Code Ann. § 13–11–19 (2005). As has been observed by another court, "[t]he use of different terms within the same sentence of a statute plainly implies that different meanings were intended."

*Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 440 A.2d 810, 814 (1981).

4. The fact that Andreason was required to defend against the collection action Defendants instituted based on the altered membership agreement might very well itself be considered a loss under section 13–11–19 for which Andreason may recover the $2000 penalty. When Defendants' agent altered the membership agreement, such actions violated the UCSPA, and Andreason was forced to spend time to defend the resulting collection action that should have never been instituted in the first place. Given the broader concept of loss, this imposition can certainly be viewed as a detriment Andreason unnecessarily suffered, but for which actual damages may not necessarily be demonstrable. *See supra* ¶¶ 12–13.

sonal credit report. Missing from the evidence on summary judgment, however, were the relevant dates that the negative information would have been present in his personal credit report, which dates were needed to tie the negative information to Andreason's assertions about its impact. Apparently, neither party could provide the exact dates during which the negative information would have been present on Andreason's credit report. As a result, Andreason's effort to tie his credit woes to the negative information failed to establish with any degree of certainty or specificity an amount of "actual damages" that would be compensable under section 13–11–19. Utah Code Ann. § 13–11–19(2).

¶ 19 Nonetheless, given the realities of our credit-dependent economy, we have no hesitation concluding that improperly causing negative information to be included in a personal credit report itself qualifies as the type of threshold "loss" section 13–11–19 requires a consumer to demonstrate as a result of a violation of the UCSPA. Certainly in this day and age, negative information in one's personal credit report can have a significant detrimental effect on one's credit rating, on one's ability to secure or maintain lines of credit at reasonable interest rates, and on one's sound fiscal reputation in general. It is clear that the negative information would not have been placed on Andreason's credit report but for the collection action Defendants instituted against him, which was based on a contract that had been fraudulently altered in contravention of the UCSPA. While Andreason is unable to show the exact dates the negative information would have been included in his credit report and quantify the harm it caused him so as to recover actual damages under the statute, he has nevertheless demonstrated he suffered the threshold loss

required to recover $2000 in statutory damages as mandated by the Legislature. *See id.*

## CONCLUSION

¶ 20 We conclude that the trial court was correct in denying Andreason's motion for partial summary judgment as the elements for issue preclusion were not met by the record before us. We also hold that the Legislature, in the course of proscribing fraudulent consumer sales practices and putting some teeth into its policy, intended the term "loss" in section 13–11–19 to have a broad and generic meaning to allow consumers a greater opportunity to recover at least $2000 in statutory damages when the UCSPA has been violated. While we agree that Andreason failed to prove actual damages in any amount, the negative information Defendants caused to be included in Andreason's personal credit report meets the loss requirement of section 13–11–19. *See id.* We therefore reverse the trial court's summary judgment ruling in favor of Defendants and remand with instructions to enter judgment in favor of Andreason on his UCSPA claim and award him the $2000 statutory damages amount. In addition, it appears the trial court may also award Andreason reasonable attorney fees under the UCSPA. *See id.* § 13–11–19(5).[5]

¶ 21 WE CONCUR: CAROLYN B. McHUGH and WILLIAM A. THORNE JR., Judges.

---

5. Apparently to better ensure that section 13–11–19 is a meaningful avenue for redressing deceptive consumer sales practices, the Legislature has included an incentive for the attorney who may otherwise hesitate to undertake the representation of a consumer in a private action that promises only a minimal recovery. Specifically, the court has the authority to award "the prevailing party a reasonable attorney's fee." Utah Code Ann. § 13–11–19(5) (2005).

While Andreason, an attorney himself, is now pro se and therefore not entitled to recover attorney fees for the time he has spent representing himself, *see Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 43, 1 P.3d 1095; *Smith v. Batchelor*, 832 P.2d 467, 473–74 (Utah 1992), he was previously represented by counsel in this matter. He may therefore be eligible to receive a reasonable attorney fee award for those fees he incurred while represented by counsel. *See Softsolutions*, 2000 UT 46 at ¶ 43, 1 P.3d 1095.